The next case is Malone v. United States Patent & Trademark Office and Mr. Mangum. Mr. Mangum, for Josh Malone, the Plaintiff Appellant. May it please the Court. The Judicial Court's opinion is incompatible with the Supreme Court's decision in Butts v. Economy. I want to talk a little bit about, there's some important things in the briefing that your Honors need to be aware of about the Butts' opinion in particular. The Butts' opinion makes clear that undisclosed consultations with adjudicators about facts at issue and a pending administrative proceeding are not protected deliberations. And what's important about the Butts' decision specifically is in interpreting the Administrative Procedure Act, the Supreme Court said that any person or party, including other agency officials, concerning a fact at issue in the hearing, you may not consult any person or party concerning a fact at issue in the hearing unless on notice and on opportunity for all parties to participate. So that holding is critical here because the agency invoked FOIA Exemption 5, which protects only those documents normally privileged in the civil discovery context. So undisclosed communications that violate the APA's notice and participant... Do I understand in the facts of this record that the deliberations you're addressing are those with the pool judges? Correct. So it's all discussions among judges? Correct. So that if you have a district court... I was on the district court and we had bench meetings every Wednesday and we talked about the business of the court and so forth and some judge would raise a question, has anybody decided a case or know of a case that talks about FOIA? And another judge might say, yeah, there's a case, take a look at Jones v. Smith. You would say that's an improper consultation among judges?  It was the nature of the consultation. I mean, here there was a practice that they could take some look at it. The panel had the ultimate responsibility, didn't they, to make the decision. It's clear. Yes, but the difference here, and I want to be very clear, at the time most of the decisions were actually required to go to what was referred to as the circulation judge pool. Yeah, but it seems to me the bottom line in your position is you don't even want judges talking to one another. You think that's governmental misconduct. No, our position is that... or suggestions about a draft opinion. And every court in the country makes allowances for prefiling comments from non-panel judges about how an opinion could be revised or improved or whatever, and that seems to me right at the heart of what the deliberative process is designed to protect. That makes for one thing, if you have somebody that... Every panel is not the whole court, and it makes for better decisions. If non-panel judges spot a problem or an error in a panel opinion, they should be free to point that out, and then discussions would ensue and back and forth would ensue, and that's exactly... that kind of communication between judges is what the deliberative process rule is supposed to protect, and it seems to me you don't want judges talking to each other. And in that case, we're not going to produce the same quality of opinion. And in the city of Virginia Beach, I guess it's the U.S. Fish and Wildlife Service versus Sierra Club, it says the privilege shields from disclosure documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. And then our own decision in the city of Virginia Beach says these sorts of exchanges are deliberative because they reflect the give and take of the consultative process by revealing the manner in which the agency evaluates alternative policies or outcomes. And if you... if all of this... if early opinion drafts and comments are going to be made public, judges just aren't going to call. They aren't going to offer anything. They're going to pull their punches, and we're going to lose much of the quality that deliberative process brings about. So I'll draw your honors to the discussion in the briefing with the... there's a whistleblower case, Fitzpatrick. I'm talking that isn't the gravamen of your position that you do not want non-panel judges and panel judges even talking to one another despite the fact that they are members of the same court, that they are responsible for following and producing the court's decisions. And you don't even want them talking to each other. No, that's not our position, your honor. The whole point is... Well, you're changing your position. No. Our position is that in the APA and in the regulations we cited that it's not that those discussions are impermissible per se. That's never been our position. Our position is that... That is your position. Your position was that they couldn't even circulate opinions among their peer group of judges. Well, we were... You actually called it misconduct. Well, the misconduct comes when it's secretive. So our position is that... Well, it's got to be secretive to be deliberative. In other words, if you lay it all out and provide notice of it, then you have the public participating in the deliberation that judges engage in, and you're going to have a very, very different outcome. Well, I... If you can't have... Why is it misconduct for me or Judge Niemeyer or Judge King or any judge in this country to talk to another judge about how a particular opinion might be approved or shored up or whatever? You didn't raise the government misconduct point below for one thing. For another thing, the government misconduct is something you want to add to the statute, which isn't there. And the third thing is, how in the world can it be government misconduct for any judge of our court to communicate with another judge about how their opinion could be made better and improved? It goes to the heart of strangling the judicial process as it has operated in every court across this country. So our position, and we cite a reg that was in existence at the time, and then the APA and then just due process, was if there's going to be deliberations about fact issues in the case, and particularly in this situation, it was done by a panel that exerted influence over the decision. So it wasn't just judges consulting at the water tank. It was a situation where, and that's why I ask you honors to really look at the Fitzpatrick case, because it was a whistleblower case where the whistleblower won this case. And the reason why he won it was there were deliberations going on. There was three impaneled judges, but two, a chief judge, two judges and a deputy chief judge with authority, said the decision, which had been written, it should come out this way instead. And the impaneled judges said, well, if you're going to tell us how to rule, then we should at least let the parties know that this is no longer a three-panel judge. It's a five-panel judge. The particular procedures there is a matter for the Federal Circuit to straighten out. But your point was you have said that the circulation, and that is your position, and it's as clear as it can be, that the circulation of opinions among non-panel judges, which every circuit in the country does, you say that's governmental misconduct, it's impermissible, it violates the due process clause, it violates the APA, it violates the PTO regulations. I can't find that it violates any of those. And I just do not accept in any way, shape, or form that it is governmental misconduct to try to produce the best opinion possible. So I would emphasize two things to that. One, our position is primarily that they're not deliberative if there is a violation of the governing law. Does that mean one judge can't consult with another judge? In your view, what about consulting with their law clerks? No, here we're focusing specifically on the communications at issue are between the panel judges and other judges in the CJP. Do not answer Judge King's question because your position went so far as to say that any consultation outside the panel process was impermissible in that way. In fact, you talk specifically about staff, like law clerks. You want to just take the deliberative process and strangle it in the crib. Our position, if you look at the communications that were withheld that we're still seeking, those are communications very similar to what was at issue in the Fitzpatrick case, which are communications where in-panel judges are in communication with non-in-panel judges discussing about the facts of the case. And we're not saying that those are the... What's wrong with discussing the facts of the case? I mean, it seems to me we can't create hypotheticals here, but when you circulate opinions, just take the circuit courts across the country, they circulate opinions to the whole court, and the non-panel judges will make comments. Now, if they say, raise a question about was that fact really there or that fact seems to be inconsistent with this fact, you may want to take a look at that. The question is you want to eliminate all that, right? No, no, we don't want to eliminate it. We want the same outcome that happened in Fitzpatrick, which is simply... Well, you're saying it violates the due process clause. In the absence of disclosure, in the absence of at least informing the parties, as was in Fitzpatrick, this wasn't a decision by three panel judges. This is now essentially a decision by five judges. And so our problem is not so much that the discussions occurred. It's that they occurred in secret. How many judges' names were on the opinion? On the Fitzpatrick one? One judge is at the top of the opinion. Right. And two concurred. Correct. And that's who made the decision. The one wrote it, and two concurred in it. Yeah, usually for the IPR cases, it's just a first listed judge, and then three judges sign on. Excuse me, but how is that a violation of due process if you have one judge writing the opinion and two concurring in the opinion, and the three judges may have received the benefit of comments as if they do all across the country from non-panel members? You've had three judges that, with the best of advice available to them, have come up with the best opinion they could have, and that would satisfy the way the judicial process is supposed to function. And you're saying that that deliberation is a violation of due process? It seems to me that you got extra process in a constructive way. It's not a violation of due process. It was a properly functioning process that took advantage of the information and comments and experience of other judges to make the final product a good one. That's all that happens. I'm out of time, but may I address a question? Yes. Okay. So, again, I would point to the rule in Butts, and we've highlighted it multiple times by the Supreme Court addressing the statute in question, when the government said any person or party, including other agency officials, and an important point on that is in the agency's briefing, they said, well, Butts predates the definition for person, and so they at least suggest that Butts' opinion saying, including other agency officials, shouldn't apply here. What are you talking about here? Are you talking about the PTO regulations? No, no, no. I'm talking about the APA that we cite for a violation of due process. Well, we're not talking about that. We're talking about whether judges can have other judges consult on an opinion so as to make them pre-decisional and deliberative. And if they're pre-decisional and deliberative, FOIA does not require their production. I guess our point, then, is we interpret the governing statute, the APA and the regs, to require, to not prohibit that, but say there must be notice given to the parties, and here there was no notice given. But the APA definitions, they define, preclude certain things, but it's interesting that the APA definition defined person, which is at the heart of the prohibition, to exclude an agency. So the APA itself would seem to not to prohibit intra-agency discussions because the term an agency is excluded from the prohibition. And thank you, Judge Wilson. That was the point I was trying to get to. That definition that you just are reading from was operative when Butts was decided in 1978. There wasn't a different definition before the Supreme Court. And under vertical star decisis, we are required to accept the Supreme Court's decision and its interpretation of Section 554 in which the Supreme Court said any person or party, including other agency officials. And so our position is simply. Thank you. Okay, thank you. Counsel, I'm going to ask my co-panelists if they have further questions.  I'm fine. Paul, are you okay? I'm fine. Thank you. Thank you. Mr. Metzger. Mr. Metzger. Good morning, Your Honors, and may it please the Court. Matthew Metzger for the United States Patent and Trademark Office, or PTO for short. The issue in this case is whether the District Court properly upheld the PTO's withholding of records pursuant to FOIA Exemption 5. It's not an APA case. It's not a due process case. This is a FOIA case. And as such, we're looking to whether draft opinions and discussions of those draft opinions are the quintessential examples of pre-decisional and deliberative records. Because they are, they're therefore protected by the deliberative process privilege. They are therefore exemptable under FOIA Exemption 5, and this Court respectfully should affirm. There's no more, there's no clearer or more classic example of the deliberative process's worth. I entirely agree with Your Honor. I agree with Your Honor's opening remarks that this case is quickly resolved by City of Virginia Beach and Sierra Club. That there are only two elements, and just two elements to the deliberative process privilege. It is the record deliberative. This is Exhibit A and the prototypical example of how the deliberative process, of why there is a deliberative process exclusion, and of how the deliberative process is supposed to function. This is Exhibit A. I entirely agree with the Court. I think the privilege was designed to avoid the chilling of agency discussions. The record supports that. Opening up the discussions between the authoring PTAD judge and her or his staff, the PTAD judge and her or his colleagues, and then to the larger pool, would effectively chill and undermine the work of the agency, which, as this Court has already noted, is designed to provide a measure of quality control, to ensure consistency with not just the agency, but also reactive decisions from the Federal Circuit to promote continuity. One of the things we need to do is we need to produce circuit law that is free from intra-circuit conflicts. And in order to have some sort of uniform position or uniform rule of circuit law and not having intra-circuit conflicts, you need sometimes to have non-panel judges comment on something and say, hey, I think there's an inconsistency here. In other words, these consultations are important in avoiding intra-circuit conflicts, and the Federal rules place a high premium on not having intra-circuit tension. I agree, and I think the same could be said for agency rulemaking, where consistency and non-arbitrariness are a hallmark of what we want from government agencies and their functionality. And so that's why this circulation function, or even the ability to communicate with staff, to just catch basic scrivener's errors, is just so key, and ultimately why there's a significant chilling effect. And so what has always been understood in the FOIA context, taking a step back and thinking less about the doctrines of deliberative process, is whether the governing test is set forth by the Supreme Court's decision in Grolier, is whether or not the underlying record is routinely disclosed in civil litigation. And draft opinions are not routinely disclosed in civil litigation. And my friend has yet to identify a clear, binding, articulating case suggesting that any type of draft decision or communications about said draft decisions are routinely, emphasis on routinely, disclosed in civil litigation. They are not. I was of the view that his position, Judge King alluded to this, his position, the logic of it was you couldn't even talk with your law clerks, or you couldn't even talk with staff, because the staff is not a panel judge, and the law clerk is not a panel Article III judge. And that's the logical extension of it. Your Honor, I agree with that, and I think it's most crisply advertised in reply at 11, where it was, quote, broadly prohibits ex parte communications, and that's the regulation. So under my friend's reading, the judge may only communicate with him or herself, not necessarily colleagues or staff, but then quickly he retreats to a new position, which is completely incongruous with his original statement, which is then that clerks are not bound by this prohibition. So I think this is a just make sure that only the communications between the PTAB and the PTAB authoring panel and the circulation judges are contemplated by this exception, and I'm fine with ignoring the rest. That's not a principled argument at all, and why, you know, ultimately we've gone so far afield from the parameters of the deliberative process privilege. You need to hear anything more. We need to hear nothing more on this. Well, I thank the court for its time, and we'd ask that the court affirm. Thank you. Your Honor, I just want to point out something from the briefing. When you look at one thing my friend just stated for the agency is that it would have a chilling effect. Well, it's interesting. After this FOIA was filed, a number of regulations were promulgated by the USPTO addressing some of this undue influence that was happening by the circulation judge pool, the very issues that were raised successfully by a whistleblower, which is where the problem here was the communications involving unimpaneled judges were influencing the outcome of the decision, and they were in positions of power to do so. And so after Fitzpatrick, in fact, in the Fitz, sorry, it was before Fitzpatrick, the MSPB recognized that there were new safeguards that came into place to address and limit what impaneled judges could do and who they could talk to. So everything in the briefing that talks about 37 CFR section 43, all those regulatory provisions, those came in after the communications in question. These are all new regulations. So the suggestion that putting some type of safeguard in place or allowing a notice type of requirement would prohibit discussions or prohibit talking to staff is just wrong. And let me give you some examples of what these new regulations did. Section 43.4a, again, after these were promulgated or entered months after the time period in question, about six months I think, 43.4a now prohibits a management judge or an officer or employee of the office external to the board from initiating communication directly or through intermediaries with any member of a panel regarding a decision. So the USPTO itself is limiting certain types of discussions. Section 43.4 now makes it optional what was required in most cases. In other words, optional and solely with the discretion of an individual panel member can they consult with the circulation judge pool. The problem was before that it wasn't optional. In most cases it was required. And the people that they were consulting with had influence on it. What we're talking about here is a FOIA request. We don't have a separate lawsuit. We have a FOIA request. And the FOIA request excludes pre-decisional deliberative material. Pre-decisional or deliberative material. And that's what this falls into. You don't deny that, do you? No, I actually do deny it. I want to be very clear on this. When you look at the category. The categories I thought were pre-decisional. Let me read to them. The drafts of the order. So there were essentially four categories. One of them was draft orders. It's pre-decisional. Right, right. Sorry, maybe I misunderstood your question. I'm saying that the FOIA delineation of what has to be produced and what has to be withheld. It excludes pre-decisional deliberative matter, right? Yes. Okay. And you're asking for that matter. We are asking. We're saying that the. Our primary argument is not that the government misconduct exception should. Draft opinions be made available to you. Right. Because there were. A draft opinion that some law firm prepares for me. Or a memo a law firm prepares for me. No, that's not. Well, that's what. No, they are APJ opinions. They're red line documents from another judge, a non-impending judge. All right, I'll write the opinion and give it to my law clerk and he makes it red line. But that's not. And rewrites it. Those aren't the categories of documents that were withheld. That'd be pre-decisional deliberative material. Right, but the documents that were. They give it back to me, I study it. And I give it back again and it goes back and forth. The documents that were withheld were. E-mails or communications between other judges. Not law clerks working for the panel judges. Other judges too? Right.  Well, that's deliberative, isn't it? Among the judges? It is. It's deliberative in the sense. And we're not saying you can't deliberate. Our point is. In the event you're going to discuss facts. I'm just asking categorically. I mean, you want to go outside the FOIA statute to get these documents. You're basically saying it's misconduct or due process violation or something. But the statute says. Defines the limitation in terms of pre-decisional or deliberative matter. And that's what you are asking for. So it seems to me categorically. You start with a proposition that the FOIA denial was appropriate under the statute. And your only claim is that, well, it's not appropriate because it's misconduct of some kind. No, our position is that there are specific regulatory and new regulatory positions. Under the new rubric of section 43, there could be some violations. Our position is that they're not deliberative. But you have said that even the discussions of an exchange of draft opinions among judges or whatever. Is an example of governmental misconduct. And that there is a governmental. Without any citation to any opinion. You have said that this kind of circulation is an example of governmental misconduct. And you didn't raise that as I see it beforehand. It's not in the statute. And I just do not understand. I'm not a believer in, you know, the government is pure. But I do not understand how it can possibly be misconduct for judges to try to talk among themselves to produce the best final product possible. How can that be misconduct when we're doing exactly the thing that we were put on the bench to do? I guess I would point again to Fitzpatrick where there was a finding. There was a whistleblower finding that the circulation judge pool was exerting undue influence over judges. And influencing the final product. And our position is that if you're going to have. The final judge. The judge's name on it. You're saying is not trustworthy. No. All of these. What happens leading up to that final product can't be confidential. Well, there are there are a number of concerns about who's writing the opinion. And if if the opinion is being written or significantly influenced by two non-appellate judges. The parties have a right to know that they have a right to know who wrote the opinion. There's there's there's due process. His name's on it. One wrote the opinion of his name on it. And that judge is responsible for the whole thing. And we trust them to get there in a proper way. To get it right. So my time's out. I don't know if there's another question. Answer very quickly. So repeat the question. The question is, is the judge who wrote it the judge whose name's on it? Is that the question? It's his job to ask you the question. It's not your job to ask Judge King the question. I just want to make sure I'm restating it correctly. Yeah, so our position is that the parties have a due process right to know who is influencing. If another judge is influencing or partially writing an opinion, they the parties should be on notice for that. What about a law clerk? No, that's not what we're talking about here. We're talking about other agencies. Judges can't influence it, but law clerks can. Correct. None of the withheld communications are with law clerks. They're all dealing with other non-impanel judges. We're talking about categories. Correct. And your categories include law clerks. No, if you look at the categories of withheld documents, they're all about other non-impanel judges with the impanel judges. That's the one point of commonality with the withheld documents. Thank you, sir. Thank you. We'll come down and greet counsel and take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King